UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

ADLER,

        Plaintiff,

   -v-                                       No.  16 CV 1635-LTS-GWG

SOLAR POWER, INC., STEVEN KIRCHER,
AMY LIU, JOHN DOE 1-3, SPI SOLAR,
INC., and SPI ENERGY CO., LTD.,[1]

        Defendants.

---------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Kevin Adler ("Plaintiff") brings this action against SPI Solar, Inc. and its predecessor Solar Power, Inc. (collectively "Solar Power"), Steven Kircher, Amy Liu, and three unnamed defendants (collectively, "Defendants").  Plaintiff asserts five causes of action arising from the negotiation and termination of an employment relationship, including breach of contract (Count 1), breach of the implied covenant of good faith and fair dealing (Count 2), defamation (Count 3), fraud (Count 4), and violation of New York Labor Law § 191 et seq. ("NYLL") (Count 5).  (Compl., Docket Entry No. 1.)  The parties have filed cross-motions for summary judgment, with Defendants seeking summary judgment dismissing all counts and Plaintiff seeking partial summary judgment on Counts 1, 3, 5 and damages for the breach of contract alleged in Count 1 for failure to grant stock.  (Docket Entry Nos. 40, 44.)  Plaintiff also moves to amend the complaint to add SPI Energy Co., Ltd., a successor party defendant to Solar Power, Inc.  (Docket Entry No. 55.)

---

[1]      The Clerk of Court is hereby directed to amend the caption of this case, as shown above, to include SPI Energy Co., Ltd.

The Court has subject matter jurisdiction of the action under 28 U.S.C. § 1332(a)(3).

The Court has carefully considered the submissions of both parties. For the following reasons, Plaintiff's motion for partial summary judgment is granted in part and denied in part and Defendants' motion for summary judgment is granted in part and denied in part. Plaintiff's unopposed motion to add SPI Energy Co., Ltd. as a successor party defendant is also granted.

<u>BACKGROUND</u>[2]

Solar Power was, at all relevant times, headquartered in China and engineered, constructed, and acquired solar energy projects in several countries. (Def. 56.1 St. ¶¶ 2-3.)

Plaintiff founded and worked at Sol-Wind, a business entity that aggregated renewable energy assets. (<u>Id.</u> ¶¶ 4-5.) After an unsuccessful initial public offering, Plaintiff, then employed as a consultant with Sol-Wind, was terminated. (<u>Id.</u> ¶ 12.) On or about February 26, 2015, Plaintiff met with Henry Ka, Solar Power's Senior Vice President of Corporate Development, and Kirchner,[3] Solar Power's North America Chief Strategy Officer, founder, and former Chief Executive Officer, in San Francisco. (<u>Id.</u> ¶ 15; Pl. 56.1 St. ¶¶ 16-17.) Kircher and

---

[2] The facts recited herein are undisputed unless otherwise indicated. Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St.," "Pl. 56.1 St.," "Def. 56.1 Resp.," "Pl. 56.1 Resp.," or "Def. 56.1 Reply") incorporate by reference the parties' citations to underlying evidentiary submissions. The Court declines to address facts raised by the parties that are immaterial or conclusory statements of law which the parties proffer as facts.

[3] Defendants dispute that Kircher attended the meeting in San Francisco in their response to Plaintiff's 56.1 statement but assert that he was there in the 56.1 statement in support of their own motion to dismiss. (Def. 56.1 St. ¶¶ 15-16; Def. 56.1 Resp. ¶ 6.)

Ka discussed with Plaintiff the possibility of him joining Solar Power and expressed their desire that Plaintiff would bring an experienced team of his colleagues from Sol-Wind.  (Def. 56.1 St. ¶ 16; Adler Tr., Docket Entry No. 45-3, at 40:6-25.)

On about March 16, 2015, Plaintiff and some of his former colleges attended another meeting in New York City also attended by Solar Power leadership, including Xiaofeng Peng, Chairman of Solar Power, Hoon Khoeng Cheong, Solar Power's Chief Operating Officer, and Ka.  (Def. 56.1 St. ¶¶ 18-19.)  Kircher did not attend this March 2015 meeting.  (Id. ¶ 20.) Peng discussed Solar Power's desire to hire an experienced team to create either a Master Limited Partnership ("MLP") or a YieldCo that "would aggregate operating solar and wind renewable energy projects and sell its shares on the New York Stock Exchange or the NASDAQ." (Def. 56.1 St. ¶ 16.)  Although the parties disagree on the specific features and definitions of MLPs and YieldCos, such entities generally aggregate solar energy projects with the intention that interests in the entity will eventually be publicly traded or traded in a manner resembling public trading.[4]  (See Def. 56.1 St. ¶ 8; see also Pl. 56.1 Resp. ¶ 8.)

At the March meeting, Peng discussed Solar Power's $1.5 billion open line of credit, which would be needed to fund an MLP or YieldCo, and noted various projects that Solar Power could contribute to the MLP or YieldCo.  Other Solar Power officers present may also have contributed to those discussions.  (Def. 56.1 St. ¶¶ 23-25; Pl. 56.1 Resp. ¶ 23; Pl. 56.1 St. ¶ 29; Adler Tr. 66:14-68:10.)  At his deposition, Ka testified that, to his knowledge, Kircher did not make any representations about Solar Power's finances, lines of credit, or its current and

---

[4] Plaintiff disputes Defendants' explanation of the features and examples of how MLPs and YieldCos operate and objects to Defendants' use of a deposition of a plaintiff in a similar action against Solar Power, Jamil v. Solar Power Inc., 16-CV-1972-JSR (S.D.N.Y.), to explain these entities.  (See Pl. 56.1 Resp. ¶¶ 8-10.)  The specifics of such operations are not materially relevant to the issues raised in this motion practice.

prospective projects during the discussions between Adler and Solar Power.  (Def. 56. St. ¶¶ 26-27.)

Adler's Hiring

Ka took the lead in negotiating the terms of Solar Power employment with Plaintiff and his former Sol-Wind co-workers.  (Id. ¶ 29.)  On or about April 1, 2015, Amy Liu, then Solar Power's Chief Financial Officer, authorized Solar Power to hire Plaintiff and several of his former colleagues.  (Id. ¶ 28.)  Liu, by email to Ka, approved Plaintiff's position and compensation, though there was no explicit approval to transfer stock to Plaintiff as compensation.  (Pl. 56.1 St. ¶ 7; Def. 56.1 Resp. ¶ 7.)  The parties disagree on whether Peng, Liu, Kircher, or Cheong were involved in negotiating Plaintiff's employment contract, internally deliberating on changes and terms to the contract, or approving the final draft of the contract.  (Pl. 56.1 St. ¶¶ 8, 10-12; Def. 56.1 Resp. ¶¶ 8, 10-12; Pl. 56.1 Resp. ¶ 67; Def. 56.1 Reply ¶ 67.)  Defendants also assert that personal communications between the Solar Power executives, as testified to by Ka, did not include any discussions about compensating Plaintiff with stock in addition to his salary.  (See Def. Mem. of Law in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Def.'s Opp'n"), Docket Entry No. 51, at 4-5; Ka Tr., Docket Entry No. 45-6, 45:16-46:23.)

It is nonetheless undisputed that Liu authorized Kircher to execute the final contract, hiring Plaintiff as Vice President, Head of Structure Finance – North America, which was in the form of an offer letter and acceptance statement (collectively, the "Employment Agreement").  (Pl. 56.1 St. ¶¶ 19-20; Pl. 56.1 Resp. ¶ 87.)  Ka then emailed the executed contract document to Plaintiff's attorney and a Solar Power payroll and accounting representative,[5]

---

[5]        Defendants dispute Plaintiffs assertion that this email was sent to someone in Solar Power's accounting and payroll department because the email itself does not identify the

writing "[c]ongratulations! It's official now. Please date it for April 8th."  (Pl. 56.1 St. ¶¶ 22; PX N, Docket Entry No. 56-14.)

Terms of Plaintiff's Employment

The Employment Agreement provided that Solar Power agreed to compensate Plaintiff through an annual salary of $220,000, a twenty-five percent bonus, and restricted stock that would vest at certain milestones.  (DX F, Docket Entry No. 45-8.)  Solar Power also agreed to create an MLP or YieldCo, to be known as Management LLC, which Plaintiff would help to operate for Solar Power.  (Pl. 56.1 St. ¶ 28.)  Although the Employment Agreement stated that Plaintiff would be based in both San Francisco, California and New York City, he predominantly worked in New York.  (Pl. 56.1 St. ¶ 41.)

The Employment Agreement, whose effective date was April 8, 2015, provided that Plaintiff would be "entitled to a bonus of at least 25% . . . upon the achievement of certain goals as mutually agreed to by [Plaintiff] and the Company in January of each calendar year." (DX F at 1.)

The Employment Agreement obligated Solar Power to grant Plaintiff 490,000 shares of restricted Solar Power stock within 30 days of the execution of the Employment Agreement.  (Id. at 1-2; Pl 56.1 St. ¶¶ 33-37.)  30,000 of the shares, referred to as the "Sign-On Restricted Stock," were to vest on the 60th day following the execution of the contract provided Plaintiff was still employed by Solar Power on that date.  (Pl. 56.1 St. ¶ 33.)  280,000 of the shares were "Time-Based Restricted Stock," 70,000 of which were to vest one year from the

---

occupations of all the recipients, but Ka's testimony makes clear that Erica Gadula, copied on the email, was employed in the payroll and accounting department.  (Ka Tr., 45-6, 48:11-14; Pl. 56.1 St. ¶ 24; Def. 56.1 Resp. ¶ 24.)

effective date of the Employment Agreement, and 17,500 of which were to vest at the end of each calendar quarter thereafter. (DX F at 2.) The remaining 180,000 shares were denominated "Performance-Based Restricted Stock" and were to vest upon the achievement of certain milestones related to the MLP/YieldCo plan, the first of which was creation of an Acquisition Credit Facility of at least $200 million. (Id.) The shares associated with a particular milestone would vest immediately if the company terminated or ceased to pursue that milestone. (Id. at 2-3.) The Employment Agreement further provided that, in the event of a termination without good cause, the Sign-on Restricted Stock and Time-Based Restricted Stock would vest 100% automatically. (Id. at 3.) All of the stock was subject to restriction pursuant to 17 C.F.R. § 230.144(d) and therefore could not be sold for 180 days.[6] (Def. 56.1 Resp. ¶ 38.) Plaintiff never received any of the restricted stock from Solar Power. (Pl. 56.1 St. ¶ 52.)

Solar Power entered into similar employment contracts, providing for salary and restricted stock, with William Heck, dated March 25, 2015, Tamir Jamil, dated April 16, 2015, and Sharon Mauer, also dated April 16, 2015. (DX H, I, and J, Docket Entry Nos. 45-10, 45-11, 45-12.)

Notwithstanding the inclusion of stock-based compensation provisions in each of the cited Employment Agreements Defendants contend, citing testimony by Peng, that only Solar

---

[6]     The parties dispute whether the 180-day restriction begins at the transfer or vesting of the stock. (Pl. 56.1 St. ¶ 38; Def. 56.1 Resp. ¶ 38.) The Jamil court determined that the 180-day holding period commenced when the stock was or should have been transferred and applied only if the contractual vesting period was less than 180 days. Jamil v. Solar Power, Inc., 230 F. Supp. 3d 271, 274, 276 n.1 (S.D.N.Y 2017). Because there are material issues of fact relating to the determination of damages for breach of the stock grant provision of the Employment Agreement, the Court need not address this dispute in connection with this motion practice.

Power's board of directors had authority to approve the issuance of stock to Adler and that the board never approved such an issue. (Def. 56.1 St. ¶¶ 44, 46.)

Melodious International Investments Group, Ltd. purchased stock in Solar Power on November 19, 2015, for $2.70 per share, although it was not specified if such stock was restricted. (Adler Aff., Docket Entry No. 56, ¶ 25.) The daily average of the public price of Solar Power stock was $1.95 on June 8 and $1.91 on June 15, 2015, as calculated from the opening and closing prices on the day in question.[7] (Plaintiff's Reply Mem. of Law in Further Supp. of Plaintiff's Mot. for Summ. J., Docket Entry No. 65, at 7-8.)

The Employment Agreement also provided that Solar Power would create Management LLC within 60 days of the execution of the Employment Agreement and that Plaintiff and his team would be granted "a significant ownership interest in Management LLC." (Pl. 56.1 St. ¶ 39; DX F at 3.) By August 12, 2015, Solar Power had officially ceased its YieldCo strategy without creating Management LLC. (Pl. 56.1 St. ¶¶ 39, 45, 48; Def. 56.1 Resp. ¶¶ 39, 45, 48.) Solar Power terminated Adler's employment on September 30, 2015. (Def. 56.1 St. ¶ 55.)

Defamation

Plaintiff alleges that, on June 20, 2015, Liu summoned Heck, who was then a vice-president at Solar Power, to meet her at a hotel in California on June 23. (Heck Aff., Docket Entry No. 47, ¶¶ 2-4.) At the meeting Liu, who was primarily based in China, allegedly told Heck that she wanted "control over the North American platform and [that] she would be replacing Adler," Kircher, and Ka. (Id. ¶¶ 2, 7.) According to Heck, Liu characterized Adler as

---

[7]     The Court may take judicial notice of these publicized stock prices. See Wilamowsky v. Take-Two Interactive Software, Inc., 818 F. Supp. 2d 744, 756 n.8 (S.D.N.Y. 2011).

"a thief, trying to steal from Solar Power" and accused him of working with Ka and Kircher to steal the company.  (Id. ¶ 6 (internal quotation marks omitted).)  She also allegedly referred to Plaintiff as "incompetent," "a terrible business man," "stupid," "a bad man," and "a man without morals," and stated that Plaintiff "thinks all Chinese are stupid people."  (Id. ¶ 6.)  Liu then asked Heck to "prepare a business plan for North America . . . , but to exclude Adler, Kircher, and Ka."[8]  (Id. ¶ 8.)  On July 14, 2015,[9] Liu told Plaintiff that she did not want to honor his contract and asked him to tear up his contract.  (Adler Tr. 205:1-25.)  As previously stated, Solar Power then terminated Adler on September 30, 2015.  (Def. 56.1 St. ¶ 55.)

Solar Power, Inc.'s Subsequent Merger

Plaintiff has proffered uncontroverted evidence that Solar Power, Inc., has merged with another entity to become a wholly owned subsidiary of SPI Energy Co., Ltd.  (SPI Energy Co., Ltd., United States Securities and Exchange Commission Form 6-K, dated January 4, 2016, Docket Entry No. 56, Ex. 25; Peng Tr., Docket Entry No. 45-13, 17:6-8.)  SPI Energy Co., Ltd., conducts business in "substantially the same manner as it was conducted by [SPI Solar, Inc.]"

---

[8]     Plaintiff testified that Liu made similar statements about him to Sharon Mauer and Taimur Jamil.  (Adler Tr. 211:2-212:10.)  Defendants correctly point out that Adler's allegations as to Mauer and Jamil's accounts of statements by Liu constitute inadmissible hearsay.  Accordingly, these allegations have not been credited for purposes of this motion practice.  Fed. R. Evid. 802; Manessis v. N.Y. City DOT, No. 02-CV-359, 2003 WL 289969, (S.D.NY. Feb. 10, 2003) (inadmissible hearsay may not create a genuine issue of material fact in the consideration of a motion for summary judgment); (See Def. 56.1 St. ¶¶ 48-53).

[9]     As Adler was terminated on September 30, 2015, the transcript of Adler's deposition appears to incorrectly place this conversation in July of 2016.  (See Def. 56.1 St. ¶ 55.)

and continues to be "managed by substantially the same board of directors and executive officers that managed" Solar Power, Inc. (<u>Id.</u> at 2.)

<u>D<small>ISCUSSION</small></u>

The pending motions are brought pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  Under Rule 56(a), summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a material issues of fact, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986), and the court must be able to find that, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." <u>Marvel Entertainment, Inc. v. Kellytoy (USA), Inc.</u>, 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting <u>Heublein v. United States</u>, 996 F.2d 1455, 1461 (2d Cir. 1993)) (internal quotation marks omitted).  A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Holtz v. Rockefeller & Co. Inc.</u>, 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).  "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (quoting <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1456 (2d Cir. 1995)) (internal quotation marks and citations omitted).  When considering cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  <u>Schwabenbauer v. Board of Educ. of City School Dist. of City of Olean</u>, 667 F.2d 305, 314 (2d Cir. 1981).

<u>Choice of Law</u>

A federal court sitting in diversity will adopt the choice of law analysis of the forum state in which it sits. <u>Softel, Inc. v. Dragon Med & Sci. Commc'ns</u>, 118 F.3d 955, 967 (2d Cir. 1997). Plaintiff resided, worked, and negotiated his contract in New York, and the parties agree that New York law applies to both Plaintiff's contract and defamation claims. (Mem. of Law in Supp. of Pl.'s Mot. for Partial Summ. J., Docket Entry No. 49, at 3; <u>See</u> Mem. of Law in Supp. of Def.'s Mot. for Summ. J, Docket Entry No. 41, at 4, 7.) The Court will apply New York law because, by relying on New York law in their briefs, the parties implicitly consented to its application. <u>Celle v. Filipino Reporter Enters., Inc.</u>, 209 F.3d 163, 175-76 (2d Cir. 2000) (parties are deemed to have consented to a choice of law if they do not object); <u>Joyce v. Thompson Wigdor & Gilly LLP</u>, No. 06-CV-15315-RLC, 2008 WL 2329227, at *3 (S.D.N.Y. June 3, 2008) (court applied New York law when parties assumed the application of New York law in their submissions).

<u>Breach of Contract</u>

To establish a breach of contract under New York law, "a plaintiff must prove . . . (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." <u>Diesel Props S.R.L. v. Greystone Bus. Credit II LLC</u>, 631 F.3d 42, 52 (2d Cir. 2011). Generally, if the Court determines that, as a matter of law, the terms of a contract are facially unambiguous, there is no genuine issue of material fact as to the contract's meaning and summary judgment may be appropriate. <u>Krumme v. WestPoint Stevens Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000) ("[T]he threshold question in a

dispute over the meaning of a contract is whether the contract terms are ambiguous.");  Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie, 784 F.3d 78, 87-88 (2d Cir. 2015) ("Because facial ambiguity in a contract will require the factfinder to examine extrinsic evidence . . . a court will not grant summary judgment  . . . when the operative language is ambiguous.").

Plaintiff alleges that Solar Power breached his Employment Agreement by: failing to pay him a bonus of 25% of his annual compensation; failing to form and grant him equity in the contemplated Management LLC; and failing to transfer to him 490,000 shares of restricted stock.

Twenty-Five Percent Bonus

Both parties move for summary judgment with respect to Plaintiff's breach of contract claim based on Solar Power's failure to award Plaintiff a twenty-five percent bonus. Defendants argue that Plaintiff was not entitled to the bonus because the conditions precedent to the award of the bonus—agreement to and fulfillment of annual performance goals—were never fulfilled.  Plaintiff argues that he should be excused from any conditions precedent because Solar Power did not agree to the goals for 2015 and thus prevented satisfaction of conditions precedent.

"A condition precedent is an act or event, . . . which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."  Oppenheimer & Co. v. Oppenheim, 86 N.Y.2d 685, 690 (1995) (internal quotation marks and citations omitted).  A party is not relieved of its obligation to perform a contractual duty in reliance on the nonoccurrence of a condition precedent if he or she caused the condition not to occur.  Amies v. Wesnofske, 255 N.Y. 156, 162-64 (1931); Jamil v. Solar Power, Inc., 16-CV-1972-JSR, 2016

U.S. Dist. LEXIS 163000, at *14-15 (S.D.N.Y. Nov. 7, 2016) (when the award of stock was contingent upon the plaintiff granting the defendant a release, the defendant's performance was not excused when it failed in its implicit duty to supply the plaintiff with the release documentation for signature).  A party can impermissibly frustrate the occurrence of a condition precedent either through affirmative obstruction or through inaction where the party has a duty to act.  Semi-Tech Litig., LLC v. Bankers Tr. Co. (In re Bankers Tr. Co.), 450 F.3d 121, 127-29 (2d Cir. 2006).

The Employment Agreement unambiguously imposes two sequential conditions precedent to the award of Plaintiff's bonus.  See Krumme, 238 F.3d at 138-39.  First, the parties must mutually set goals in the January of the year for which the bonus is to be awarded.  (DX F at 1.)  Next, Plaintiff must achieve those mutually established goals.  (Id. at 1.)

Plaintiff's employment commenced in April 2015 and was terminated in September 2015.  Thus, no employment relationship existed in January 2015 and mutual goals could not logically have been set at that time.  The Employment Agreement made no provision for the payment of a bonus for a year in which there was no employment relationship in January.  Furthermore, it was an at-will agreement and it made no provision for the payment of a bonus upon termination.  Plaintiff has thus failed to demonstrate that he was entitled to a bonus in connection with his employment in 2015.  He failed to meet the general conditions precedent set forth in the Agreement and has not shown that there was any other relevant 25% bonus provision.  Plaintiff's argument that SPI prevented his compliance with the conditions by not agreeing to goals for 2015 finds no basis in the agreement – goals were to be set in January, the agreement was not in effect in January 2015, and Plaintiff thus fails to demonstrate that SPI breached any duty to set goals for 2015.

SPI is therefore entitled as a matter of law to judgment in its favor dismissing Plaintiff's breach of contract claim to the extent that claim is premised on failure to pay him a bonus of 25% of his annual compensation. Plaintiff's cross-motion for summary judgment as to this claim is denied.

Restricted Stock

Both parties move for summary judgment on Plaintiff's claim that Solar Power breached the Employment Agreement by failing to transfer the restricted stock to Plaintiff. Defendants argue, based on Peng's testimony, that Solar Power had no obligation to transfer the stock because Kircher was not authorized to bind the company to such an obligation. According to Peng, only the board of directors could approve and grant stock. There is, however, no genuine issue of fact as to whether Kircher was authorized by Solar Power to act as its agent in connection with the Employment Agreement. Kircher executed and delivered agreements to Adler and others that included provisions for stock grants. As explained below, Kircher had apparent authority to make such grants to Adler even if Solar Power's internal procedures required board approval of the actual issuance of stock, and Solar Power breached the Employment Agreement by failing to grant and deliver restricted stock to Plaintiff.

Because corporate principals "are not natural persons[,] . . . they must act solely through the instrumentality of their officers or other duly authorized agents." See also Kirschner v. KPMG LLP, 15 N.Y.3d 446, 465 (2010) (alterations, citations, and internal quotation marks omitted).

An agent may bind a principal if he or she has actual authority, which may be express or implied, or apparent authority. Minskoff v. American Express Travel Related Servs. Co., 98 F.3d 703, 708 (2d Cir. 1996). Actual authority exists where "the agent may reasonably

infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." Id. at 708. Apparent authority arises when a principal undertakes communications or actions from which a reasonable third party may infer that an agent has the authority to bind the principal. Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc., 241 F. Supp. 2d 246, 261 (S.D.N.Y. 2002).

Defendant has proffered only Peng's testimony concerning actual authority to issue stock. Taking that testimony as true for the purposes of the analysis of Plaintiff's cross-motion for summary judgment, the Court turns to the evidence of record concerning apparent authority.

Apparent authority is analyzed in two steps: First, courts determine whether the principal's actions created the appearance of authority and, second, courts examine whether the plaintiff reasonably relied on this appearance. See FDIC v. Providence Coll., 115 F.3d 136, 140 (2d Cir. 1997); Astra Oil Co., LLC v. Hydro Syntec Chem., Inc., No. 13-CV-8395-ALC, 2014 WL 630676, at *3-4 (S.D.N.Y. Feb. 18, 2014). Although the existence of apparent authority is a question of fact generally best suited for determination by a jury, summary judgment may be appropriate if "the facts are undisputed . . . or there is but one way for a reasonable jury to interpret them." Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading, Inc., 697 F.3d 59, 71-72 (2d Cir. 2012) (evaluating apparent authority in an admiralty action).

The reasonable appearance of apparent authority should be analyzed by examining facts known to the third party at the time of the transaction. See Reiss v. Societe Centrale Du Groupe Des Assurs. Nationales, 246 F. Supp. 2d 273, 284 (S.D.N.Y. 2003) ("apparent authority . . . focuses on the cloak of authority at the time of the transaction"). Representations by the purported agent may not contribute to create the reasonable appearance of

authority.  Musket Corp. v. PDVSA Petroleo, S.A., 512 F. Supp. 2d 155, 163 (S.D.N.Y. 2007).

Significantly, a plaintiff does not have a duty to inquire into the scope of an apparent agent's

authority unless the transaction is extraordinary or novel.  Herbert Constr. Co. v. Continental Ins.

Co., 931 F.2d 989, 995-96 (2d Cir. 1991).  A novel transaction that should spur a plaintiff to

inquire further as to an agent's authority is one in which the principal or other similar entities do

not normally engage.  Providence Coll., 115 F.3d at 14-42.

      Here, Solar Power, through its officer Ka, engaged in numerous communications

and actions, known to Plaintiff at the time of the transaction, indicating that Kircher had

authority to bind Solar Power to employ Plaintiff.  Ka negotiated the terms of employment with

Plaintiff, sent Plaintiff an executed offer letter signed by Kircher, told him what date to affix, and

congratulated Plaintiff.  See Astra Oil Co., 2014 WL 630676, at *4 (a principal was estopped

from denying agent had apparent authority when, among other acts, the principal forwarded the

plaintiff a contract with the apparent agent as the only signatory); see also Halpert v. Manhattan

Apartments, Inc., No. 04-CV-1850-BSJ, 2011 WL 5928782, at *3 (S.D.N.Y. Nov. 29, 2011)

(actions of corporate defendant's receptionist created genuine issues of material fact as to

whether purported agent had apparent authority).  Ka also copied a representative of the

accounting and payroll department on this email.  Notwithstanding Defendants' argument that

Solar Power undertook no action that gave the appearance that it had specifically delegated the

authority to grant stock to Kircher, the undisputed factual record demonstrates that Kircher was

imbued with apparent authority to hire him and Plaintiff was under no duty to inquire into the

scope of Kircher's authority to the extent compensation partially through stock transfers was

neither novel nor extraordinary.  See Herbert Constr., 931 F.2d at 995-96.  Here, Defendants

have produced no evidence indicating that stock transfers to employees were novel and, in fact,

Defendants submit several other employment contracts, executed for Solar Power by Kircher shortly before or after Plaintiff's, which also indisputably established employment relationships and compensation terms including provisions for the transfer of stock.

On this record, no reasonable jury could conclude that Solar Power's actions did not give Kircher an appearance of authority to commit it to all employment terms and forms of compensation, or that it was unreasonable of Plaintiff to rely on Kircher's apparent authority. Kircher's execution and Solar Power's delivery of the signed Employment Agreement was therefore effective, as a matter of law, to obligate Solar Power to fulfill the restricted stock provisions of the Employment Agreement. Solar Power is, as a matter of law, liable for breach of those provisions by reason of its failure to grant and deliver the stock to Adler in accordance with the Employment Agreement. Plaintiff's motion for summary judgment is therefore granted as to Solar Power's liability on the restricted stock aspect of Plaintiff's breach of contract claim. Defendants' motion for summary judgment is consequently denied as to that aspect of the breach of contract claim.

The Court turns next to Plaintiff's motion for summary judgment on the resultant damages from Defendants' failure to transfer the restricted stock. Contract damages for the failure to deliver securities are to be valued at the time of breach. Union Capital LLC v. Vape Holdings Inc., No. 16-CV-1343-RJS, 2017 WL 1406278, at *6 (S.D.N.Y. Mar. 31, 2017) (quoting Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 825 (2d Cir. 1990)). If the transfer is one of restricted securities, a discount must applied to account for the decrease in value relative to a similar unrestricted security. Waxman v. Envipco Pickup & Processing Servs., No. 02-CV-10132, 2006 WL 1788964, at *2-4 (S.D.N.Y. June 28, 2006); see also Simon

v. Electrospace Corp., 28 N.Y.2d 136, 147 (1971) (observing, in dicta, that a restricted security should be discounted).

In order to establish damages under New York law, a plaintiff must provide "a stable foundation for a reasonable estimate of [the damages,]" although "the plaintiff does not need to prove damages with mathematical precision." Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918, 926 (2d Cir. 1977); (internal quotation marks and citations omitted); Netherby Ltd. v. Jones Apparel Group, Inc., No. 04-CV-7028-GEL, 2007 WL 1041648, at *18 (S.D.N.Y. Apr. 5, 2007) (citations and internal quotation marks omitted). "[T]he burden of uncertainty as to the amount of damage is upon the wrongdoer." Contemporary Mission, 557 F.2d at 926; Process Am., Inc. v. Cynergy Holdings, LLC, 839 F.3d 125, 141-42 (2d Cir. 2016).

Here, Plaintiff proffers certain sale prices for Solar Power stock, including a private sale to Melodious International Investments Group, Ltd. on November 19, 2015, for $2.70 per share, and daily average public sale prices of $1.95 on June 8 and $1.91 on June 15, 2015. Notably, Plaintiff does not state whether the Melodious sale involved restricted stock. Plaintiff, in his reply brief, also discusses several other examples of private sales of restricted Solar Power stock with a sale price of $2.70 per share, but does not cite to admissible evidence or describe whether the restrictions were similar to those imposed on the stock owed to Adler pursuant to 17 C.F.R. § 230.144(d).

Plaintiff argues that the Court should select one proffered prices as a stable foundation from which to estimate damages, but does not explain which of its proffered sale prices the Court should employ. Defendants do not attempt to fix a price or proffer facts to determine an appropriate discount rate, but argue that a discount is required to account for the

180-day restrictions on the alienability of the stock and that such uncertainty should be resolved at trial.

Even assuming Plaintiff has established a stable foundation for damages, the nature of the restrictions on alienability of the stock represents a fact sufficient to allow a rational jury to infer, in favor of the non-moving Defendants, that the value of the stock at the time it was to be granted in accordance with the Employment Agreement, was diminished compared to the, presumably, unrestricted stock prices proffered by Plaintiff. C.f. Jamil v. SPI Energy Co., 713 F. App'x 42, 44-45 (2d Cir. 2017), as amended (Nov. 29, 2017) (finding that the discount to be applied to restricted stock should be established by evidence unique to each specific case). It is, therefore, appropriate for the jury to consider the question of damages at trial and, accordingly, the Court denies Plaintiff's motion for summary judgment with respect to damages.

Formation of Management LLC

Plaintiff moves for summary judgment with respect to Solar Power's failure to form Management LLC and grant him and his team significant equity therein, in accordance with the Employment Agreement. Plaintiff asserted this claim in his complaint and moved for summary judgment with respect to it. (Compl. ¶¶ 52, 60, 103, 105, 123.) Defendants, aside from disputing some immaterial and tangential facts in their 56.1 counter-statement, offer no response to Plaintiff's motion for summary judgment on this breach. (See Def. 56.1 Resp. ¶ 39.) Because the Employment Agreement unambiguously imposed the unilateral duty on Solar Power to create, within 60 days of the agreement's execution, Management LLC and grant equity therein to Plaintiff, the Court finds that Plaintiff is entitled to judgment on this breach as a matter of law and grants summary judgment in his favor for liability only. See Krumme, 238 F.3d at 138.

<u>Implied Duty of Good Faith and Fair Dealing</u>

Defendants seek summary judgment dismissing Count 2, which asserts a claim for the breach of the implied duty of good faith and fair dealing with respect to Defendants' breach of the Employment Agreement and failure to transfer the restricted stock to Plaintiff. Defendants argue that this claim is duplicative of Plaintiff's breach of contract claim and should, therefore, be dismissed as a matter of law. See <u>RJ Capital S.A. v. Lexington Capital Funding III, Ltd</u>, No. 10-CV-25-PPG, 2011 WL 3251554, at *13 (S.D.N.Y. July 28, 2011).

"[W]hen a complaint alleges both a breach of contract and breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." <u>Cruz v. FXDirectDealer, LLC</u>, 720 F.3d 115, 125 (2d Cir. 2013) (citation omitted); <u>see</u> <u>also</u> <u>Woodhams v. Allstate Fire and Cas. Co.</u>, 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010), <u>aff'd</u>, 453 Fed. App'x 108 (2d Cir. 2012) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled.") (internal quotation marks and citations omitted). Plaintiff's claim for a breach of the implied duty of good faith and fair dealing is, therefore, dismissed as redundant and, to the extent Plaintiff asserts a claim for Defendants' failure to transfer the restricted stock distinct from the breach of the Employment Agreement, moot, based on the Court's grant of summary judgment in favor of Plaintiff for that aspect of his breach of contract claim. Accordingly, the Court grants summary judgment to Defendants and dismisses Count 2.

<u>Defamation</u>

Both parties seek summary judgment with respect to Plaintiff's claim that Liu made defamatory statements about Plaintiff to Heck. A spoken defamatory statement is actionable as the tort of slander whereas a written defamatory statement is classified as libel. Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001). To succeed on a claim for defamation a plaintiff must establish that the defendant communicated "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se." Id. at 265-66. Defendants argue that they are entitled to judgment as a matter of law because Plaintiff's evidence as to Liu's statements is not sufficiently precise and that the alleged statements do not constitute slander per se, convey opinion rather than fact, and are protected by qualified privilege.

The Court examines Defendants' contention that Liu's statements constituted nonactionable opinion rather than fact and, finding the statements to be opinion, grants summary judgment in favor of Defendants. The distinction between an opinion and a fact is a question of law to be resolved from the perspective of a reasonable listener or reader of the purportedly defamatory statements. Mann v. Abel, 10 N.Y. 3d 271, 276 (2008); see also Celle, 209 F.3d 163 at 178. While a defendant will not be liable for a statement of pure opinion under New York law, a statement of opinion that implies a basis in facts that are undisclosed to the reader or listener may form the subject of a claim for defamation. Davis v. Boeheim, 24 N.Y.3d 262, 269 (2014) (quoting Steinhilber v. Alphonse, 68 N.Y.2d 283, 289 (1986)).

To help determine whether a statement constitutes fact or opinion a court will examine

> the challenged statements with a view toward (1) whether the specific language in
> issue has a precise meaning which is readily understood; (2) whether the

statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal to readers or listeners that what is being read or heard is likely to be opinion, not fact[.]

Gross v. New York Times Co., 82 N.Y.2d 146, 153 (1993) (quoting Steinhilber, 68 N.Y.2d at 292) (internal quotation marks, alterations, and citations omitted).

The statements attributed to Liu can be generally characterized as either (1) implicating Plaintiff's competence and professionalism, (2) branding Plaintiff as a bad person, (3) suggesting his prejudice against Chinese people, or (4) calling Plaintiff a thief. Liu's statements characterizing Adler as incompetent and unprofessional are opinion because they implicate subjective standards of performance without precise definitions and are not readily classified as either true or false. See Varughese v. Mount Sinai Medical Center, No. 12-CV-8812-CM, 2015 WL 1499618, at *74-75 (S.D.N.Y. Mar. 27, 2015), aff'd, No. 15-1328, 2017 WL 2889483 (July 7, 2017) (characterizing plaintiff's work as substandard, unprofessional, and unsatisfactory are statements of opinion); see also Miller v. Richman, 592 N.Y.S.2d 201, 184 A.D.2d 191, 193 (App. Div. 4th Dep't 1992) ("[S]tatements criticizing plaintiff's performance and comparing her unfavorably to other[s] . . . are, as a matter of law, nonactionable expressions of opinion[.]"). Similarly, characterizing Plaintiff as a bad person is a statement of opinion, not susceptible to either a precise definition or classification as either true or false. See Steinhilber, 68 N.Y.2d at 292.

Labeling a person a thief may be a factual and disprovable accusation of criminal conduct or merely a hyperbolic opinion, depending on the context and tone of the communication. See Gross, 82 N.Y.2d at 155-56. Liu's statement that Plaintiff was a thief must, therefore, be evaluated in its broader context. Plaintiff proffers that Liu made

this statement in the same conversation in which she disclosed her plans to replace

Plaintiff and seize control of Solar Power's North American operations and less than a

month before she asked Plaintiff to tear up his contract.  See Steinhilber, 68 N.Y.2d at

294 (statements made in the context of a heated labor dispute were construed as opinion).

Furthermore, Liu labeled Plaintiff a thief in the same conversation in which she also

characterized him as incompetent, unprofessional, prejudiced against Chinese people, and

a bad person.  Understood in the context of a corporate power struggle and employment

dispute, Liu's comments were not a serious allegation of criminal conduct, but one

epithet in a series of disparaging opinions about Plaintiff's value, place, and future with

Solar Power that could not be understood to imply Liu's statement was based on

undisclosed knowledge that Adler had actually committed theft.  See O'Mahony v.

Whiston, No. 652621/2014, 2016 N.Y. Misc. LEXIS 3678, *9-10 (N.Y. Sup. Ct. N.Y.

Cty. Oct. 7, 2016) (statement that defendants were thieves was an opinion when viewed

in context with the other pejorative opinions communicated with the statement); see also

Davis, 24 N.Y.3d at 269.

Liu's statement that Plaintiff "thinks all Chinese are stupid people" is

similarly an opinion when viewed in context of Liu's relationship and employment

dispute with Plaintiff and her concurrent disparaging statements about Plaintiff.  See

Ratajack v. Brewster Fire Dep't, Inc., 178 F. Supp. 3d 118, 165-66 (S.D.N.Y. 2016) (a

writing labeling the plaintiff as a racist was an opinion both because of the tone of the

writing and because the facts buttressing the allegation were previously disclosed).

Given that context, a reasonable listener would have no basis to conclude that such a

statement was based upon undisclosed facts.  See Steinhilber, 68 N.Y.2d at 294.

Accordingly, Liu's statements were non-actionable opinion as a matter of law and, therefore, summary judgment is granted in favor of Defendants and denied as to Plaintiff for Count 3.[10]

Fraud

Defendant moves for summary judgment dismissing the cause of action for fraud against Kircher asserted in Count 4. Plaintiff alleges that Kircher fraudulently induced him to execute the Employment Agreement by communicating that he had the authority to bind Solar Power to transfer the restricted stock that Solar Power had access to a $1.5 billion line of credit, and that Solar Power had access to certain projects that it could contribute to Management LLC. "The elements of a fraud cause of action consist of a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." Pasternack v. Lab. Corp. of Am. Holdings, 27 N.Y.3d 817, 827 (2016) (quoting Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178 (2011)) (internal quotation marks and alterations omitted).

To the extent Kircher made any representations that he had authority to grant stock to Plaintiff, such representations were not false, as the Court has determined that Kircher had apparent authority to do so. Defendant argues that Kircher was not at the March, 2015 meeting at which Peng detailed the projects Solar Power could contribute to Management LLC and stated that Solar Power had a $1.5 billion line of credit and, therefore, could not have made such representations. While Plaintiff correctly argues that Kircher could have made similar

---

[10]     Because Liu's statements constitute nonactionable opinion, the Court does not reach Defendants' remaining arguments.

representations at another time, he provides no evidence, relying only on the allegations in his complaint and speculation.  (See Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. and in Supp. of Cross-Mot. to Add Successor Party, Docket Entry No. 58, at 16-17.)  No genuine issue of material fact exists because Plaintiff has produced no evidence that would enable a reasonable jury to conclude that Kircher made the alleged representations.  Delaware & H. R. Co. v. Conrail, 902 F.2d 174, 177-78 (2d Cir. 1990) ("The non-movant . . . must demonstrate in opposing a summary judgment motion that there is some evidence which would create a genuine issue of material fact.").   Summary judgment is, therefore, granted to Defendant as to Count 4.[11]


NYLL Claim

The parties cross-move for summary judgment on Plaintiff's NYLL claim.  Plaintiff asserts that Solar Power's failure to award him his 25% bonus and transfer him the required restricted stock, allegedly in breach of the Employment Agreement, amounts to a prohibited deduction from Plaintiff's agreed-upon wages in violation of Section 193 of the NYLL.  To qualify as wages under NYLL, a bonus or incentive must be earned by and vested in the employee.  Bader v. Wells Fargo Home Mortg., Inc., 773 F. Supp. 2d 397, 417 (S.D.N.Y. 2011).  Based upon this Court's holding on Count 1, Plaintiff's twenty-five percent bonus was not vested and, therefore, did not constitute wages under the NYLL.  See id. at 417.

Under the NYLL, bonuses and other incentive compensation qualify as wages if they are "expressly linked to [a plaintiff's] labor or services personally rendered," rather than linked to the performance of the employer as a whole.  Ryan v. Kellogg Partners Institutional

---

[11]    In light of this holding, the Court declines to consider Defendants' argument that the fraud claim is duplicative of the breach of contract claim.

<u>Servs.</u>, 19 N.Y.3d 1, 2-3 (2012) (quoting <u>Truelove v. Ne. Capital Advisory Inc.</u>, 95 N.Y.2d 220, 224 (2000)) (alterations and internal quotation marks omitted).  The value of equity-based compensation, even if initially awarded in recognition of an employee's personal performance, is inherently linked to the performance of the employer and, consequently, may not constitute wages.  <u>Gilman v. Marsh McLennan Cos.</u>, 868 F. Supp. 2d 118, 136 (S.D.N.Y. 2012), <u>aff'd</u>,654 Fed. App'x. 16 (2d Cir. 2016); <u>Guiry v. Goldman Sachs & Co.</u>, 814 N.Y.S.2d 617, 619-20 (N.Y. App. Div. 1st Dep't 2006).  The future value of the restricted stock at issue here was dependent on Solar Power's performance not that of Plaintiff individually, and, therefore, such stock does not qualify as wages under the NYLL.  Accordingly, summary judgment is granted in favor of Defendant and denied to Plaintiff for Count 5.

<u>Plaintiff's Motion to Add a Successor Party</u>

Plaintiff moves to add SPI Energy Co., Ltd. as a successor entity to Solar Power, Inc.  Merged entities generally incur the liabilities and obligations of their predecessors.  <u>Cargo Partner AG v. Albatrans, Inc.</u>, 352 F.3d 41, (2d Cir. 2003) ("[W]hen two corporations merge . . . the successor corporation [is] automatically liable for the debts of both predecessors.").  Because SPI Solar, Inc. merged to create SPI Energy Co., Ltd. and because Defendants fail to object, the Court grants Plaintiff's motion to add SPI Energy Co., Ltd. as a party to this action.

<span style="font-variant:small-caps">Conclusion</span>

For the foregoing reasons Plaintiff's motion for summary judgment is granted with respect to the breach of contract claim plead in Count 1 for liability only as to Solar Power's failure to deliver the restricted stock and form Management LLC.   Defendants' motion for

summary judgment is granted with respect to the breach of contract claim plead in Count 1 for Solar Power's failure to remit the twenty-five percent bonus to Plaintiff.  Plaintiff's motion for summary judgment as to damages for Defendants' failure to deliver the restricted stock, is denied.  Defendants' motion for summary judgment is denied in all other respects as to Count 1.

Defendants are granted summary judgment dismissing Counts 2, 3, 4, and 5.

Plaintiff's motion for summary judgment is denied in all other respects.

Plaintiff's motion to add SPI Energy Co., Ltd. as an additional party defendant is granted and the clerk of this court is directed to amend the caption of this action as shown above.

The Final Pretrial Conference in this action will be held on **June 22, 2018**, at **12:00 p.m**.  The parties must confer and make submissions in advance of the conference in accordance with the Pre-Trial Scheduling Order (Docket Entry No. 24).  The parties are instructed to meet promptly with Magistrate Judge Gorenstein to discuss settlement and any outstanding pretrial issues relating to the remaining damages claims.

This Memorandum Opinion and Order resolves Docket Entry Nos. 40, 44, and 55.


SO ORDERED.

Dated: New York, New York
      March 30, 2018

                                       /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        United States District Judge