UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

KEVIN ADLER,

       Plaintiff,

  -v-                                                  No. 16 CV 1635-LLS-GWG

SOLAR POWER, INC., STEVEN KIRCHER,
AMY LIU, JOHN DOE 1-3, SPI SOLAR,
INC., and SPI ENERGY CO., LTD.,

       Defendants.

------------------------------------------------------x

## AMENDED MEMORANDUM ORDER[1]

       Kevin Adler ("Plaintiff") brings this action against SPI Solar, Inc., its predecessor Solar Power, Inc. ("Solar Power"), SPI Energy Co, Ltd. ("SPI"), Steven Kircher, Amy Liu, and three unnamed defendants (collectively "Defendants") for breach of contract, defamation, fraud, and violation of New York Labor Law. On March 30, 2018, the Court granted partial summary judgment in Plaintiff's favor on his breach of contract claims in connection with the denial of grants of Solar Power stock and equity in a special-purpose entity as compensation for Plaintiff's work as an employee of Solar Power. Adler v. Solar Power, Inc., 16-CV-1635-LTS-GWG, 2018 WL 1626162 (S.D.N.Y. Mar. 30, 2018). Plaintiff has filed a second motion for pre-judgment attachment of SPI's "Hawaii Assets," a term used by Plaintiff to refer to projects held by and

---

[1]    This Amended Memorandum Order supersedes the Memorandum Order entered on March 11, 2019 (Docket Entry No. 116).

through Calwaii Power Holding, LLC and lower tier special purpose subsidiaries.[2] (Docket Entry No. 95.)

The Court has considered the submissions of both parties carefully and, for the following reasons, grants Plaintiff's motion.

BACKGROUND

SPI is a Cayman Islands corporation formed from the reorganization of Solar Power, Inc. (Aff. of Kevin Adler, Docket Entry No. 96, ¶ 3.) SPI is domiciled in China and is not authorized to do business in New York. (Id.) SPI develops, installs, operates, and sells utility- and residential-scale photovoltaic solar power projects. (Decl. of Hoong Khoeng Cheong, Docket Entry No. 100, ¶ 4.)

SPI's only assets in the United States are "a portfolio of solar projects . . . to be constructed in Hawaii" (the "Hawaii Assets") and stock in EnSync Inc. ("EnSync"), "consisting of convertible preferred shares, a warrant to purchase . . . common stock and publicly traded common stock." (Adler Aff. ¶ 9.) Adler asserts that SPI is systemically attempting to secrete its assets by placing them out of reach of any potential judgment creditors, including other plaintiffs pursuing related employment actions. (Id. ¶¶ 5, 6, 13, 16.)

In its SEC Form 20-F/A, dated October 27, 2017 (Docket Entry No. 96-2, at 30), SPI stated that it would be difficult to enforce judgments in the United States or the United Kingdom against SPI and its directors and managers because its assets and senior personnel were primarily located in the People's Republic of China and the company is registered in the Cayman Islands, neither country having treaty mechanisms to enforce U.S. judgments. Adler states,

---

[2]  (See Mem. in Supp. of Pl.'s Mot. for Attachment, Docket Entry No. 97, at 1 n.2 and accompanying text, pp 3, 9, 18, 19; Adler Affidavit, Docket Entry No. 96, ¶¶ 9, 12-16 and Exhibits.)

based on knowledge allegedly gained in the course of his employment with Defendants, that SPI's practice is to transfer all of its money to China, and leave as few assets in the United States as possible. (Adler Aff. ¶ 16.)

The Hawaii Assets are owned, through special-purpose subsidiaries, by Calwaii Power Holding, LLC ("Calwaii"), which is in turn a wholly owned subsidiary of SPI. (SEC Form 20-F/A, dated October 27, 2017 at 44, 60, 74, F-31; see also Stephen Kircher Tr., Docket Entry No. 96-3, 96. (stating that SPI's assets in Hawaii are owned by Calwaii, through which SPI owns the individual projects).) According to the 2017 SEC filing, the Calwaii projects consist of approximately 40 photovoltaic systems, and were acquired in 2014. (SEC Form 20-F/A, dated October 27, 2017 at 44, 74, F-31.) In its SEC Form 20-F/A, dated October 27, 2017, SPI stated that four systems had been sold in 2015 and SPI expected to consummate nine more sales before the close of 2017. (Id. at F-31.) In this SEC form, SPI further stated that it was developing and selling three tranches of Hawaiian solar projects.[3] (Id. at 82.) SPI planned to commence construction and sale of the first tranche by the end of 2018, to complete the construction and sale of the second tranche by approximately April 2019, and to complete development of the third tranche in 2018 with construction commencing in 2019. (Id. at 82.)

Adler was privy to discussions about selling the Hawaii Projects to a particular (but unnamed) buyer when he was employed by Defendants. (Adler Aff. ¶ 14.) Adler's former colleagues and an executive at the company constructing the projects within the Hawaii Assets have confirmed that SPI is continuing to negotiate the sale of some of the projects. (Id. ¶¶ 14-15;

---

[3] The parties do not explain whether these projects are in addition to or included in the 40 projects previously discussed.

see also Kircher Tr. at 96:4-12 (stating that, as of December 2016, there was a contract signed to sell 5 megawatts of power assets but that the deal was in the preliminary stages).)

SPI entered into a securities purchase agreement and a concurrent supply agreement with EnSync (then known as ZBB Energy Corporation), in which SPI would purchase certain quantities of products for its solar power projects from EnSync and SPI would receive 28,048 shares of convertible Class C preferred stock and a warrant to purchase 50,000,000 shares of EnSync common stock. (EnSync SEC Form 8-K, dated May 9, 2017, Docket Entry No. 96-6 at ECF pg. 4.) In December 2016, SPI sold 8,000,000 shares of EnSync common stock and 7,012 shares of series C-1 and 4,341 shares of series C-2 Class C preferred stock to Melodious Investments Company Limited ("Melodious"), a China-domiciled company that also owned two percent of SPI, for $17 million. (SPI SEC Form 6-K, dated July 17, 2017, Docket Entry No. 96-4; see Decl. of Hoong Khoeng Cheong, Docket Entry No. 84, ¶ 8.) Approximately half of the purchase was funded through a note. (Adler Aff. ¶ 6; see SPI SEC Form 6-K, dated July 17, 2017.) This agreement granted Melodious the right to request that SPI repurchase the Class C preferred stock. (SPI SEC Form 6-K, dated July 17, 2017.) In April 2017, Melodious exercised this right, and requested that SPI repurchase all of the Class C preferred stock for $11.6 million plus interest, which was partially offset against Melodious's $8.5 million obligation under the note. (Id.) On May 4, 2017, EnSync provided notice that it was terminating the supply agreement due to SPI's material breach, and that, as a result, the Class C preferred stock was no longer convertible into common stock and SPI's warrant to purchase 50,000,000 shares of common stock was no longer operative. (EnSync SEC Form 8-K, dated May 9, 2017.) On July 13, 2017, SPI announced (and later disclosed on an SEC Form 6-K dated July 17, 2017) that the

repurchase had been completed on July 10, 2017.[4] (SPI SEC Form 6-K, dated July 17, 2018.) SPI further disclosed that it then held 28,048 shares of preferred stock (series 1-4) and the warrant to purchase 50,000,000 shares of common stock. (Id.) In its SEC Form 20-F/A, dated October 27, 2017, SPI disclosed the consequences of the breach of the supply agreement, but disputed that its actions constituted a breach and noted that it was negotiating with EnSync to resolve the matter. (Id. at 75.)

In his affidavit, Adler characterizes the preferred shares as "illiquid" and difficult to value or monetize. (Adler Aff. ¶¶ 8, 13.) The convertible preferred shares are not eligible for dividends and, except as mandated by law, confer no voting rights. ((SEC Form 20-F/A, dated October 27, 2017 at 75.) The convertible shares do, however, have a cumulative liquidation preference of at least $28 million. (Id.)

Defendants deny any efforts to secrete assets and represent that the anticipated proceeds of SPI's Hawaii projects are being pledged to secure obligations under settlement agreements in four federal and state court employment actions against SPI. (See Decl. of Hoong Khoeng Cheong, Docket Entry No. 100, ¶¶ 5-7.)

On April 9, 2018, the Court entered a Memorandum Order denying Plaintiff's first motion for attachment, finding that Article 62 of the New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") did not authorize this Court to directly attach SPI's physical projects in Hawaii because they represented real property in another state. (Docket Entry No. 94.)

---

[4] In its October 27, 2017 SEC Form 20-F/A, SPI disclosed that NASDAQ had notified SPI that it might be delisted for failing to timely file its 2016 year-end Form 20-F, although an extension was granted. (SEC Form 20-F/A, dated October 27, 2017 at 35.)

DISCUSSION

Pursuant to Federal Rule of Civil Procedure 64, a federal court may attach property if such a remedy is available under the law of the state in which the court sits. Article 62 of the New York Civil Practice Law and Rules governs the prejudgment attachment of property. In order to succeed on a motion for pre-judgment attachment under N.Y. C.P.L.R. section 6212(a), a plaintiff must establish that: "(1) there is a cause of action; (2) there is a probability that the plaintiff will succeed on the merits; (3) a ground for attachment listed in CPLR § 6201 exists; and (4) the amount demanded exceeds all counterclaims known to plaintiff." Man Wei Shiu v. New Peking Taste Inc., No. 11-CV-1175 NGG, 2013 WL 4046382, at *11 (E.D.N.Y. Mar. 14, 2013), report and recommendation adopted as modified, No. 11-CV-1175 NGG RLM, 2013 WL 2351370 (E.D.N.Y. May 28, 2013), aff'd sub nom. Man Wei Shiu v. Jung & Assocs. Law Office P.C., 559 F. App'x 105 (2d Cir. 2014) (citing N.Y. C.P.L.R. § 6212(a)). The pertinent statutory grounds for attachment under N.Y. C.P.L.R. section 6201 are met if "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state," N.Y. C.P.L.R. § 6201(1), or "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." N.Y. C.P.L.R. § 6201(3). If these statutory requirements are met, a court may grant a pre-judgment order of attachment if, in the court's discretion, the order of attachment is needed to provide security or jurisdiction. Capital Ventures Int'l v. Republic of Argentina, 443 F.3d 214, 221-22 (2d Cir. 2006) (stating that, under New York law, an order of attachment must be supported by a need for security or jurisdiction).

An order of pre-judgment "attachment should issue only upon a showing that drastic action is required for security purposes." Bank of China, New York Branch v. NBM L.L.C., 192 F. Supp. 2d 183, 188 (S.D.N.Y. 2002) (quoting Buy This, Inc. v. MCI Worldcom Communications, Inc., 178 F. Supp. 2d 308, 383 (S.D.N.Y. 2001)) (quotation marks and emphasis omitted).  The party seeking an order of attachment "bears a heavy burden in attempting to establish its right [to such an order] . . . because New York attachment statutes are construed strictly against those who seek to invoke the remedy." Nat'l Audubon Soc., Inc. v. Sonopia Corp., No. 09 CIV. 975 (PGG), 2009 WL 636952, at *2 (S.D.N.Y. Mar. 6, 2009) (quoting Buy This, Inc., 178 F. Supp. 2d at 383) (internal quotation marks omitted).

Here, the statutory grounds for pre-judgment attachment have been met.[5]  Plaintiff has already been granted partial summary judgment as to liability in connection with Defendants' breach of contract for their failure to tender certain restricted stocks as compensation to Plaintiff and their failure to create a special purpose entity, known as Management LLC, and grant Plaintiff significant equity therein.  Adler, 2018 WL 1626162, at *6-9.  Defendant has asserted no counterclaims to offset Plaintiff's potential recovery.  Defendant does not dispute that SPI is a foreign corporation not authorized to do business in New York.  See N.Y. C.P.L.R. § 6201(1).

---

[5] The Court denied Plaintiff's first motion for attachment of the Hawaii projects as real estate assets because attaching "real property located in Hawaii would impinge improperly on that state's sovereignty." (April 9, 2018, Memorandum Order, Docket Entry No. 94, at 4.)  In the instant motion, Plaintiff seeks an order attaching SPI's membership interests in the entities holding the Hawaii Assets and proceeds of disposition of assets of those entities, which the Court may attach as intangible property belonging to a party over which the Court has personal jurisdiction.  See Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.3d 303 (2010) (granting a request that an order attaching the membership interests in several out-of-state limited liability companies be served on a garnishee while he was in the state and thus subject to the court's personal jurisdiction).

The Court thus turns to its examination of whether attachment is needed to provide adequate security to Plaintiff. SPI's preferred shares of EnSync stock are no longer convertible to common stock, confer no dividends or voting rights, and appear, as stated by Adler, to be illiquid and of minimal value. SPI's membership interest in the Hawaii Assets is therefore SPI's only potentially liquid asset available in the United States to satisfy Plaintiff's judgment.

Furthermore, the record demonstrates that SPI's standard business practice revolves around developing and then disposing of its main assets, solar parks, and moving the proceeds into the People's Republic of China, at least partly, for the purpose of shielding the proceeds from judgment. Nor is there any evidence that SPI is developing any new assets in the United States. The Court therefore concludes that it is necessary to attach SPI's direct and indirect membership and other ownership interests in the Hawaii Assets to ensure that judgment can be satisfied.[6] Cf. Samirah & Enung v. Sabhnani, No. 08-CV-2970 ADS WDW, 2010 WL 2629770, at *3 (E.D.N.Y. June 28, 2010) (finding attachment necessary because the defendants' "strong family and business ties overseas . . . [created] both the incentive and the opportunity to remove assets from this state in order to frustrate a judgment").

Defendants request that, in the event Plaintiff's motion is granted, the Court require him to post a substantial bond. N.Y. C.P.L.R. section 6212(b) requires a plaintiff to post an undertaking of not less than $500 in case the attachment was not warranted or the defendant

---

[6] The fact that, in the related employment suits, Defendants have pledged the proceeds from the sales of the Hawaii projects in connection with settlements also indicates that these projects represent the only SPI assets easily reachable by United States courts and, furthermore, that SPI exercises control over the assets of Calwaii and each of the project-holding entities.

recovers judgment.  Because Plaintiff's motion for attachment was not brought <u>ex parte</u> and because the Court has already determined liability in Plaintiff's favor, the need for such a bond is minimal.  The bond is hereby fixed at $1,000.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion is granted.  The Court directed Plaintiffs to file a proposed order of attachment with the Court by **March 18, 2019**.  Any objection or counterorder was required to be filed by **March 21, 2019**.  Pending the entry of the order of attachment, Defendants were warned not to pledge, hypothecate, transfer, or take or suffer any action to diminish in any way the value of their direct and indirect interests in Calwaii Power Holding, LLC and its subsidiaries that hold Hawaii solar projects.  The Court has reviewed the parties' respective submissions and will enter an Order of Attachment consistent with this Amended Memorandum Order.

SO ORDERED.

Dated: New York, New York
May 22, 2019

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge