ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/8/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

KEVIN ADLER,

                Plaintiff,

- against -

SPI SOLAR, INC., SOLAR POWER, INC.,
SPI ENERGY CO., LTD., STEVEN KIRCHER,
AMY LIU, and JOHN DOE 1-3,

                Defendants.

- - - - - - - - - - - - - - - - - -X

16 Civ. 1635 (LLS)

OPINION & ORDER

     The issues for resolution by this trial following Judge Swain's rulings by summary judgment, are the determination of a proper discount for the restricted nature of SPI's grants to Mr. Adler of SPI stock (a six-month holding period), and the valuation of Plaintiff's claimed ten percent share in the proposed Management LLC project.

                                1.

     Various methods of determining the discount to be applied to the restricted stock have been tendered. It is common ground that under the law it must be evaluated as of the date of the breach (the date it vested under the employment agreement) and cannot utilize hindsight. I eschew methods employing comparisons with multimillion dollar private placements, whose participants' interests are unknown and whose prices bear little relationship to the market prices available to the retail customer, and

-1-

methods informed by data from other companies.  Information drawn from the company's own stock performance in the contemporaneous market gives a sounder basis.

To get an estimate of the amount of Plaintiff's injury or benefit from being unable to sell his restricted "Sign-On" 30,000 shares and "Time-Based" 280,000 shares during the 180 days following September 30, 2015 when his ownership vested, a reasonable retail investor on the over-the-counter market might look to how the stock performed over the most recent months.  In the 145 days between May 8, 2015 (our earliest data) and September 30, 2015, SPI unrestricted shares dropped from $1.98 to $1.55, an average decline of $0.00296 per day.  At that rate, it would drop from $1.55 to $1.016 per share in the next 180 days.  At that price, the 310,000 shares would be worth $314,960 on March 28, 2016, the first day Plaintiff could sell them.

With respect to the "Performance-Based" restricted stock, which vested on June 18, 2015, the day after Amy Liu declined to sign the term sheet of the YieldCo project and thus prevented achievement of the first Milestone, SPI's unrestricted shares dropped from $1.98 on May 8, 2015 to $1.915, an average of $0.001585 per day.  At that rate, it would drop from $1.915 on June 18 to $1.63 per share in the next 180 days.  At that price, the 180,000 shares would be worth $293,400 on December 15, 2015, the first day Plaintiff could sell them.

After these discounts, the damages for non-receipt of the 490,000 shares total $608,360.

2.

As well as his recovery on the restricted stock, Mr. Adler seeks an amount from one million to four million dollars in damages for his undefined share of the possible earnings of the "Management LLC." In fact, the Management LLC had no earnings, no assets, no profits, no losses, no officers, no directors, and no existence. Some preliminary steps had been taken towards its creation - the "Milestones" laid out in the employment agreement represented stages in the building of a functioning Management LLC - but none of those Milestones was ever achieved. As support for the claim, Mr. Adler and Mr. Chait (whose testimony was received in evidence under Fed. R. Evid. 701) employ comparisons, speculative projections extending as far as 20 years forward, and academic appraisals of the prospects for earnings and worth of the contemplated Management LLC. Those share the common assumption that the Management LLC had a secure $300 million credit facility, and disregard the fact that the proposed terms for obtaining that facility were unacceptable to SPI management, which rejected them as a business decision. Although that decision was unexpected, there is no challenge to its merits, nor doubt that it fell within the authority of the officer making it. Assumptions based on the availability of a $300 million line of

credit are simply counter-factual.

Mr. Adler's ownership share relies heavily on a draft document giving a sample situation with him having a ten percent share in Management LLC, but that document was never signed, was subject to later revision, and its author testified that normally such allocations would be done in a later partnership agreement.

Neither the LLC's projected earnings nor Mr. Adler's claimed share in its ownership have been established within the standards required to support a judgment. They rest primarily on unsupported speculation and counter-factual assumptions. The only reliable documentary proof is the employment agreement.

The employment agreement does contain reasonable and provident measures for the protection of Mr. Adler in the present circumstances. It specifically addresses the contingency that ". . . the Company elects to terminate or to cease pursuing any of the Milestones," in which event Mr. Adler's "number of shares of Performance-Based Restricted Stock otherwise scheduled to vest upon the achievement of such Milestone will automatically become 100% vested as of the date of such termination or cessation." Employment Agreement pp. 2-3. It provides that in the event his "at-will" employment is terminated by SPI for any reason other than Cause (a defined term), "the Sign-On Restricted Stock and the Time-Based Restricted Stock will automatically become 100% vested as of the date of such termination . . ." (id. p. 3), plus

a month of his base salary.

Those provisions compensate Mr. Adler with an award of SPI stock reasonably valued at substantially over half a million dollars (see discussion in section 1 above) and now, with legal interest, worth nearly a million dollars.

3.

There is a separate, but fundamental, reason for the unavailability of the Management LLC damages Mr. Adler seeks. It is not only that

> . . . the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and . . .
>
> In addition, there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made (*Witherbee v. Meyer*, 155 N.Y. 446, 50 N.E. 58). If it is a new business seeking to recover for loss of future profits, a stricter standard is imposed for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty (*Cramer v. Grand Rapids Show Case Co.*, 223 N.Y. 63, 119 N.E. 227; 25 C.J.S. Damages, § 42[b]).

Kenford Co., Inc. v. County of Erie, 67 N.Y.2d 257, 261, 493 N.E.2d 234, 235 (Ct. App. 1986). In this diversity case, the law of New York State governs, and its Court of Appeals' statement is mandatory.

In the whole text of the employment agreement, and the whole body of evidence in the trial, there is no hint of any

contemplation by the parties of the infliction of damages on SPI for Management LLC's prospective but nonexistent earnings following SPI's cessation of its Management LLC project. The employment agreement addresses the possibility of such an abandonment and makes provisions for Mr. Adler's compensation even without meeting the Milestones, but not including anything from the terminated project. No such damages were contemplated, and none are awarded.

4.

"'[A] corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer . . . [and did not commit] independent torts or predatory acts directed at another.'" Murtha v. Yonkers Child Care Ass'n, Inc., 45 N.Y.2d 913, 915, 383 N.E.2d 865, 866 (Ct. App. 1978) (quoting Buckley v. 112 Cent. Park South, 136 N.Y.S.2d 233, 236 (App. Div. 1954)) (alterations and omission in original). All such claims of independent tortious or predatory conduct by them having been dismissed by summary judgment, no award of damages will be made against SPI Chief Financial Officer Amy Liu and Chief Strategy Officer Steven Kircher.

CONCLUSION

Judgment in favor of plaintiff Kevin Adler and against defendants SPI Solar, Inc. and SPI Energy Co., Ltd. will be

entered in the amount of $608,360 together with interest at the legal rate on the Performance-Based Restricted Stock component of $293,400 from June 18, 2015, and on the Sign-On Restricted Stock and the Time-Based Restricted Stock component of $314,960 from September 30, 2015, with costs and disbursements according to law.

So Ordered.

Dated: New York, New York
       August 8, 2019

                              *Louis L. Stanton*
                              LOUIS L. STANTON
                              U.S.D.J.